IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEORGE W. LINDER, SENIOR, TRUST, WILLIAM H. LINDER, II, TRUSTEE,** | : | CIVIL NO. 1:11-CV-1579 |
| **Plaintiff** | : | |
| v. | : | |
| **SWEPI LP, also known as SHELL WESTERN EXPLORATION AND PRODUCTIONS, LP,** | : | (Judge Rambo) |
| **Defendant** | : | |

## M E M O R A N D U M

Plaintiff commenced this action in the Court of Common Pleas of Tioga County, Pennsylvania, requesting declaratory relief related to the alleged expiration of an oil and gas lease. Pursuant to 28 U.S.C. § 1441, Defendant removed this action to the United States Court for the Middle District of Pennsylvania. (Doc. 1.) Presently before the court is Defendant's motion for summary judgment. (Doc. 12.) For the reasons set forth below, the motion will be granted.

**I.     Background**

    **a.     Parties**

Plaintiffs are the George W. Linder, Sr., trust and its trustee, William H. Linder, II, a resident of Florida (collectively, "Plaintiff"). Defendant SWEPI, also known as Shell Western Exploration and Production, LP, is a limited partnership with an office in Allegheny County, Pennsylvania. SWEPI's predecessors-in-interest, Allegheny Energy Development Corporation ("Allegheny Energy") and East Resources Management, LLC, ("East Resources") are not a party to this action.

b. **Facts**[1]

The central issue in this case is whether an oil and gas lease, entered into on September 27, 2000, by George W. Linder, Sr., and Phyllis E. Linder, and Defendant's predecessor-in-interest, Allegheny Energy, expired on September 27, 2010, at the conclusion of the lease's ten-year primary term. The lease pertains to 338 acres in Farmington Township, Tioga County, and was duly recorded and filed with the Recorder of Deeds of Tioga County on October 20, 2000 (hereinafter "Farmington Township Lease" or "Lease"). Through a series of transactions, Defendant SWEPI's predecessor-in-interest, East Resources, owned the rights to the Farmington Township Lease in 2010.

The Lease contains an "extension of term" clause that permitted East Resources to extend the primary term of the Lease for an additional ten-year term by paying to the Lessor an amount equal to the annual delay rental.[2] The extension of term clause provides as follows:

> EXTENSION OF TERM: Lessee may extend the primary term for one additional period equal to the primary term by

---

[1] In *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148–49 (3d Cir. 2002), the Third Circuit reaffirmed its supervisory rule first announced in *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 259 (3d Cir.1990) that "the district courts in this circuit [must] accompany grants of summary judgment hereafter with an explanation sufficient to permit the parties and this court to understand the legal premise for the court's order." *Vadino*, 903 F.2d at 259. Here, the court will identify those facts that are subject to genuine dispute, and cite to the record in order to highlight the precise nature of any disputed facts. The court will not cite to the record where the facts are undisputed; instead, the court will rely on the statements of material fact and admissions submitted by the parties. The materiality of any genuinely disputed facts will be analyzed in the discussion section below.

[2] Delay rental provisions were added to oil and gas leases in order to relieve the lessee of the obligation to immediately develop the property upon entering into an agreement. *See Hite v. Falcon Partners*, 13 A.3d 942, 946 (Pa. Super. Ct. 2011). Historically, early leases contained an express obligation on the part of the lessee to immediately develop the property or suffer forfeiture. *Id.* By adding a delay rental clause, the lessor will receive a minimum advance royalty in exchange for the lessee's right to forego immediate development of the leasehold. *Id.*

2

> paying to Lessor at any time within the primary term an Extension Payment equal in amount to the annual Delay Rental as herein described, multiplied by a factor of __N/A__, or by drilling a well on the Leasehold which is not capable of commercial production.

(Doc. 15, Appendix ("App'x") C, Farmington Township Lease.)[3] The "Delay Rental" is defined as follows:

> PAYMENTS TO LESSOR: Lessee covenants to pay Lessor, proportionate to Lessor's percentage of ownership, as follows:
>
> (A) DELAY RENTAL: To Pay Lessor as Delay Rental at the rate of __Three dollars ($3.00)__ dollars per net mineral acre per year payable __quarterly__ in advance, beginning on __9-27-2001__, and continuing thereafter until the commencement of Royalty payments. Delay Rental paid for time beyond the commencement date of Royalty payments shall be credited upon the Royalty payment. Upon Conversions to Storage, Delay Rental payments shall be reestablished.

(*Id.*) On September 10, 2010, East Resources submitted a payment of $367.14 to George W. Linder, Sr., an amount that Defendant asserts constituted the delay rental payment which operated to extend the lease for an additional ten years. Plaintiff counters that the $367.14 payment pertained to another nearly identical lease that was entered into by Mr. and Mrs. Linder and Allegheny Energy on September 27, 2000, the same day as the Farmington Township Lease, and pertaining to 122 acres in Lawrence Township, Tioga County ("Lawrence Township Lease"). (*Compare* Doc. 12, Def.'s Mot. for Sum. J., ¶ 12, *with* Doc. 19, Pl.'s Answer to Def.'s Mot., ¶ 12.) The Lawrence Township Lease is not at issue in this case.

---

[3] Defendant submitted a separate filing containing appendices in support of its motion for summary judgment. (Doc. 15.) For ease of reference, the court will hereinafter cite only to the relevant appendix therein.

The Farmington Township Lease also contains a unitization clause, which granted East Resources the right to pool, unitize or combine parts of the leasehold with other lands to aid in the equitable extraction of resources. The unitization clause provides that: "If the total unitized Leasehold acreage is less than 50 percent of the total Leasehold acreage, Delay Rental will continue to be paid on the non-unitized acreage." (App'x C.) On September 13, 2010, East Resources sent a letter to George W. Linder, Sr., advising him that East Resources had filed a Declaration of Pooling and Unitization pertaining to the Farmington Township Lease. (App'x D.) The Declaration unitized 137.81 acres of the leasehold, leaving 200.19 acres non-unitized. (App'x E.) Accordingly, because the total unitized acreage compromised less than 50 percent of the Farmington Township Lease acreage, Plaintiff was entitled to delay rental payments on the non-unitized acreage.

Although Plaintiff contends that the lease expired on September 27, 2010,[4] Plaintiff, through attorney Larry Linder, sent a letter to East Resources on October 8, 2010, notifying East Resources that delay rentals were due on the non-unitized acreage. (App'x F.) After discovering that SWEPI had become the owner of the Lease, Plaintiff sent a letter to SWEPI on April 24, 2011, likewise requesting payment of the delay rentals. (App'x G.) On May 2, 2011, SWEPI sent Plaintiff a check in the amount of $629.73, representing the full amount owed for delay rentals.

---

[4] The court has identified several minor discrepancies in the parties' filings. For example, in the complaint, Plaintiff alleges that the lease expired on September 26, 2011 and seeks a declaration accordingly. In its brief in opposition, however, Plaintiff argues that the lease expired on September 27, 2011. Additionally, the parties at various times quantify the non-unitized acres as either 200.19, 209.16, or 209.19 acres. The court finds that these minor inconsistencies are not material and have no bearing on the disposition of this motion.

(App'x H.) However, on May 16, 2011, SWEPI employee Cindi Jacoby sent Plaintiff a letter stating, in part:

> Regarding the [Farmington Township Lease], a payment was already processed for the missed 2010 payment . . . . However, upon further review of the lease, it has been determined that the Pugh Clause does not hold unpooled acreage past the expiration of the primary lease term. *Therefore, this acreage actually expired as of 9/25/2010 and no payment should have been processed for 2010.*

(App'x I) (emphasis added.)

On May 20, 2011, Plaintiff sent a letter to SWEPI (App'x J) requesting that SWEPI surrender the 200.19 non-unitized acres pursuant to the Surrender Clause in the Lease, which states as follows:

> SURRENDER: Lessee may surrender and cancel this Lease as to all or any part of the Leasehold by recording a Surrender of Lease, and if a partial surrender, the Delay Rental provided in the PAYMENTS clause shall be reduced in proportion to the acreage surrendered.

(App'x C.)

On June 18, 2011, Plaintiff again requested that SWEPI surrender its interest in the Lease, and sent SWEPI a check in the amount of $629.73, an amount equal to the May 2, 2011 delay rental payment. (App'x K.) On June 20, 2011, Cindi Jacoby voided and returned the check to Plaintiff and indicated that SWEPI would not surrender its interest in the Lease. (App'x L.) That letter states, in full, as follows:

> Dear Mr. Linder:
>
> It is now the opinion of our Land Department that delay rentals can be paid past the expiration of the primary lease term for lease #PA18426.001. We have been undergoing many policy changes since the transfer of ownership from East Resources to Shell and there has been some confusion regarding the interpretation of the

5

> Unitization Clause of the old Allegheny Energy leases. I apologize for any inconvenience this has caused your client.
>
> The payment that your client has returned is a valid payment for non-unitized acreage. I have voided your client's check to Shell Exploration and Production and enclosed said voided check with this letter. Unless otherwise notified, your client will receive his next Pugh Clause payment prior to September 25, 2011.
>
> If there are further concerns regarding this lease, please contact Jon Sellars in our Legal Department.
>
> Sincerely,
>
> s/ Cindi Jacoby

(*Id.*)

### c. **Procedural History**

On July 25, 2011, Plaintiff initiated this action by filing a complaint in the Court of Common Pleas of Tioga County, Pennsylvania. (Doc. 1, Ex. A, hereinafter "Compl.")[5] On August 23, 2011, Defendant removed this action to the United States Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1441. (Doc. 1.) Defendant filed the instant motion for summary judgment on

---

[5] Prior to filing the present lawsuit, Plaintiff filed a separate suit against East Resources in the Court of Common Pleas of Tioga County. In that case, Plaintiff requested that the court declare the Lawrence Township Lease expired as of September 27, 2010. The primary issue resolved by the court in that case was whether the "extension of term" clause, which was identical to the one here, was ambiguous and should be construed to have provided for no extension of term, as argued by Plaintiff. The court, in granting summary judgment in favor of East Resources, determined that the insertion of "N/A" as a delay rental multiplier meant that no multiplier was intended, and that the clause was not otherwise ambiguous, and therefore, East Resources was permitted to extend the lease term by payment of the delay rental. (*See* Pl. Ex. B, *Linder v. East Res. Mgmt., LLC,* NO. 983 CV 2010 (Pa. Com. Pl. Tioga Cnty., May 22, 2012)). Plaintiff has since filed an appeal which is pending in the Pennsylvania Superior Court. These facts are only applicable to Defendant's collateral estoppel argument, which, as explained more fully below, Defendant has abandoned as a result of its concession that the prior suit related to the Lawrence Township Lease, not the Farmington Township Lease at issue here.

August 20, 2012, which was accompanied by a brief in support, statement of facts, and appendix of exhibits. (Docs. 12, 13, 14, & 15.) Following an extension of time, Plaintiff filed a brief in opposition (Doc. 20), accompanied by an answer to the statement of facts and an answer to the motion for summary judgment (Docs. 18 & 19). Following another extension of time, Defendant filed a reply brief on October 5, 2012. (Doc. 25.) Thus, the motion is ripe for disposition.

**II.      Standard**

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment. Rule 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law. Fed R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 248. When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party," and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-

moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat. Ass'n,* 601 F.3d 212, 216 (3d Cir. 2010). The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### III.       Discussion

Plaintiff's complaint raises three counts. In Count I, Plaintiff asks for a declaration[6] that the lease expired as to the non-unitized acreage on September 26, 2010, stating that Pennsylvania law provides that a lease can not be extended beyond

---

[6] The Declaratory Judgment Act grants district courts of competent jurisdiction the authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Declaratory relief is within the sound discretion of the district court to grant, and in deciding whether to do so, the court is obligated to consider "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995).

the primary term merely by paying the delay rental. (Compl. ¶ 9, citing *Hite v. Falcon Partners*, 13 A.3d 942 (Pa. Super. Ct. 2011.)) In Count II, Plaintiff seeks a declaration that the lease expired regarding non-unitized acreage on September 26, 2010, because Defendant failed to pay delay rentals that were due on the non-unitized land, which constitutes a breach of contract. Finally, in Count III, Plaintiff seeks a declaration that the lease expired regarding non-unitized acreage on September 26, 2010, because the May 16, 2011 letter from Cindi Jacoby constituted a valid offer to surrender the lease as to the non-unitized acreage, an offer which was accepted by way of Plaintiff's letter dated May 20, 2011.

Defendant argues in its reply that summary judgment is appropriate because (1) the uncontested material facts demonstrate that Defendant did validly extend the lease with respect to all acreage in the leasehold (unitized and non-unitized), (2) Defendant did not materially breach the terms of the lease and (3) Defendant did not surrender its interest in the lease.[7] The court will address each argument in turn.

### a. **Defendant validly extended the lease**

---

[7] In its motion, Defendant originally raised an additional argument, asserting that Count I of the complaint is barred by collateral estoppel as a result of the Tioga County Court's grant of summary judgment in prior litigation. *See supra*, note 5. However, in its reply brief, Defendant concedes it erred when it attributed several facts to the Farmington Township Lease that actually pertain to the Lawrence Township Lease. Although Defendant does not specifically indicate which facts were erroneous, it is apparent that the prior Tioga County litigation, which forms the basis of Defendant's collateral estoppel argument, pertains to the Lawrence Township Lease, not the Farmington Township Lease. Moreover, the $367.14 payment by East Resources, which Defendant originally argued demonstrated a valid extension of the Farmington Township Lease, also pertains to the Lawrence Township Lease. Because it now appears that the collateral estoppel argument, as well as any argument based on the $367.14 payment, have been abandoned, the court will only address those remaining arguments as reiterated in the reply brief.

In its brief in opposition to Defendant's motion, Plaintiff does *not* argue that Defendant failed to validly extend the entire lease; rather, Plaintiff asserts the more limited argument that the 200.19 non-unitized acres were not validly extended as a result of Plaintiff's failure to timely submit delay rental payments. Thus, there is no dispute that the lease was validly extended insofar as it pertains to the 137.81 acres that were properly unitized in accordance with the terms of the unitization provision in the Farmington Township Lease. Plaintiff frames its argument as follows:

> Plaintiff's argument, simply stated, is that the lease continues with regard to the 137.81 acres which were pooled and unitized just prior to the ten-year term. The lease expired at the expiration of the ten-year term, to wit, September 27, 2010, when no delay rentals were paid with regard to that acreage prior to the expiration of the primary term. It is not a question of breach, it is simply a question of the fact that the contract ended pursuant to its terms.

(Doc. 20, p. 9.)

In other words, Plaintiff concedes that the lease is still valid in regards to the 137.81 unitized acres as a result of Defendant's September 13, 2010 Declaration of Pooling and Unitization. (App'x D & E.)[8] Thus, the issue before the

---

[8] The Declaration of Pooling and Unitization extends the terms of the lease by way of the following provision:

> This Declaration is made for the purposes of advising each lessor to the Lease, their successors and assigns, parties taking by operation of law and the public-at-large that:
>
> \*\*\*
>
> 2. as a result of the pooling and unitization first described above, all operations, including but not limited to, the commencement of operations, drilling and operation of a well or wells, or the existence of a well . . . in the Unit is deemed for all purposes to be the conduct of such

(continued...)

court is whether *a portion* of the leasehold pertaining to the 200.19 non-unitized acres has expired as a result of the untimely delay rental payments. Such a determination requires scrutiny of the "lease term," "extension of term," and "unitization" clauses of the contract.

Under Pennsylvania law,[9] "a lease is in the nature of a contract and is controlled by principles of contract law." *T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012). The lease "is to be construed in accordance with the terms of the agreement as manifestly expressed," *J.K. Willison v. Consolidation Coal Co.*, 637 A.2d 979, 982 (Pa. 1994), and the language of the lease should be given its "accepted and plain meaning . . . , rather than the silent intentions of the contracting parties . . . ." *T.W. Phillips*, 42 A.3d at 261. The burden of proof is on the party seeking to terminate the lease. *See id.* (citing *Jefferson Cnty. Gas Co. v. United Natural Gas Co.*, 93 A. 340 (Pa. 1915)).

Having reviewed the applicable clauses, the court finds no support for a partial extension of the Lease. Specifically, the "lease term" clause provides that "*The Lease* shall remain in force for a primary term of  ten  years . . . or . . . for as long as a well capable of production is located on the Leasehold, or *for as long as extended by provision herein*, or for as long as the Leasehold is used for the

---

[8] (...continued)
    operations or the existence of a well upon each separately owned tract subject to a Lease in the Unit, in whole or in part, *resulting in each of the Leases continuing to be in full force and effect, whether or not such Leases are beyond the end of the primary term.*

(App'x E) (emphasis added.)

[9] This matter arises under the court's diversity jurisdiction. A federal court sitting in diversity is obliged to apply the substantive law of the forum state, in this case Pennsylvania. *Lafferty v. St. Reil*, 495 F.3d 72, 76 (3d Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 68 (1938)).

11

underground storage of gas, or for the protection of stored gas." (App'x C.) The Extension of Term provides: "Lessee may extend the primary term for one additional period equal to the primary term . . . ." (*Id.*) Finally, the unitization clause states that the Lessee may "pool, unitize, or combine all or parts of the Leasehold. . . . . If the total unitized Leasehold acreage is less than 50 percent of the total Leasehold acreage, Delay Rental will continue to be paid on the non-unitized acreage." (*Id.*) There is no indication in these clauses (or any other clause in lease) that suggests the Lease could be partially extended as to certain acres, while expire as to others. Rather, these clauses anticipate extending "the Lease." Under the plain meaning of this language, the Lease either was extended in its entirety or expired in its entirety. Indeed, Plaintiff's actions of twice requesting delay rentals on the non-unitized acres after the expiration of the primary term of the Lease indicate that Plaintiff believed that the non-unitized acres continued to be governed by the terms of the Lease. In light of the above, the court finds that the Declaration of Unitization and Pooling acted to extend the entire Lease. Thus, Plaintiff is not entitled to a declaration that the lease expired only as to the non-unitized acreage and Defendant's motion will be granted in this regard.

### b. **Defendant did not materially breach the terms of the Lease**

The unitization clause of the Lease entitled Plaintiff to delay rental payments because the Declaration of Pooling and Unitization unitized less than 50 percent of the total Leasehold acreage. Here, Defendant failed to remit a timely delay rental. Although the delay rental was ultimately paid to Plaintiff, it was not sent until May 2, 2011, approximately eight months after the filing of the Declaration of Pooling and Unitization. Plaintiff claims that Defendant breached the

terms of the Lease by failing to provide timely delay rentals for the non-unitized portion of the leasehold. While Defendant concedes that the payments were made belatedly, it contends that the delay was not material and was, in any event, cured by the eventual May 2, 2011 payment.[10] For the reasons below, the court does not find that Defendant's delay in remittance of the delay rental constituted a material breach of the lease.

Under Pennsylvania law, when performance of a duty under contract was due, any nonperformance is a breach. *Oak Ridge Constr. Co. v. Tolley*, 504 A.2d 1343, 1348 (Pa. Super. Ct. 1985); *Restatement (Second) of Contracts* § 235 (2) (1981). However, the law is "clear that only [a] material [breach] of [contract] by one party discharges the other [party's duties]. An immaterial failure does not operate as such a discharge." *Sylvester v. SW Energy Prod. Co.*, 2009 U.S. Dist. LEXIS 101788 (M.D. Pa. Nov. 2, 2009) (Vanaskie, J.) (quoting *Schlein v. Gross*, 142 A.2d 329, 333 (Pa. Super. Ct. 1958)). "Whether a breach is so substantial as to justify an injured party's regarding the whole transaction as at an end is a question of degree." *Id.* (quoting *Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 468 (Pa. Super. Ct. 2003)). In other words, a breach must be "so serious [that] it goes directly to the heart and essence of the contract, rendering the breach incurable." *LJL Transp. Inc.*

---

[10] In its brief in opposition to Defendant's motion, Plaintiff attempts to distance itself from this argument by claiming that it is not bringing a claim for breach of contract, but rather, "it is simply a question of the fact that the contract had ended pursuant to its terms." (Doc. 20 at p. 9.) Thus, Plaintiff appears to argue that Pennsylvania contract law, at least insofar as it pertains to breach of contract, is inapplicable in this instance. The court disagrees and finds Plaintiff's claim to be akin to a breach of contract claim. Count II of the complaint alleges Defendant's failure to submit a delay rental payment and states "such failure to pay constituted a breach of the lease agreement." (Doc. 1, Ex. A, ¶ 17.) Because the Lease is governed by Pennsylvania contract law and the court interprets Plaintiff's claim as a breach of contract, the court will apply Pennsylvania contract law to this argument.

*v. Pilot Air Freight Corp.*, 962 A.2d 639, 642 (Pa. 2009). In determining whether a failure of performance is material, the court considers the following factors:

> a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> b) the extent to which the injured party can be adequately compensated for that part of the that benefit of which he will be deprived;
>
> c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

*Widmer Eng'g*, 837 A.2d at 468. Whether a breach of contract constitutes a material breach is a question of fact. *See Seaway Painting, Inc. v. D.L. Smith Co.*, 1999 U.S. Dist. LEXIS 19930, *10 (E.D. Pa. Dec. 21, 1999) (citing *Forest City Grant Liberty Assocs. v. Genro II, Inc.*, 652 A.2d 948, 951 (Pa. Super. Ct. 1995)).

The court finds that Defendant's untimely delay rental payment did not constitute a breach "so substantial" so as to justify discharging the obligations pursuant to the Lease or finding the Lease expired. To briefly review, Defendant recorded a Declaration of Pooling and Unitization on September 13, 2010. On October 8, 2010, Plaintiff sent a letter to East Resources notifying them that delay rentals were due on the non-unitized acreage. On April 24, 2011, Plaintiff sent another letter, this time to SWEPI, similarly requesting payment of the delay rentals. On May 2, 2011, SWEPI sent Plaintiff a check in the amount of $629.73, representing the full amount owned for delay rentals.

14

Plaintiff argues that the Lease expired pursuant to its terms with regard to the non-unitized acreage when delay rentals were not paid within 60 days of Plaintiff's October 8, 2010 request for payment. Although the basis for this argument is unclear, it appears to arise from the Limitation of Forfeiture clause in the Lease, which states:

> LIMITATION OF FORFEITURE. The Lease shall never be subject to a civil action or other proceeding to enforce a claim forfeiture due to Lessee's alleged failure to perform as specified herein, unless Lessee has received written notice of Lessor's demand and thereafter fails or refuses to satisfy Lessor's demand within 60 days from the receipt of the notice.

(App'x C.) Notably, this clause does not state that Lessee (Defendant) forfeits its interest in the lease if it fails to respond to the Lessor's notice within 60 days. Rather, this provision merely creates a 60-day "cure period" during which Defendant has the ability to cure the alleged breach. If Defendant fails to do so, Defendant may be subject to a civil action.

It is undisputed that neither East Resources nor SWEPI made a payment to Plaintiff within 60 days of the October 8, 2010 demand letter, although the reason for this failure is unclear from the parties' briefs. However, it is also undisputed that Plaintiff made a subsequent request for the payment of the delay rentals on April 24, 2011, and, on May 2, 2011, a mere eight days after the April demand letter, Plaintiff received from Defendant a check in the amount of $629.73, representing the full amount owed for delay rentals. Accordingly, the court can not identify a significant deprivation of any benefit. Indeed, Plaintiff reasonably expected to receive $629.73, an amount which was, in fact, tendered to Plaintiff, albeit belatedly. Plaintiff

15

deprived itself of this benefit by tendering a check to Defendant in the amount of the delay rental payment. That check, however, was voided by Defendant.

The facts of this case are similar to those addressed by the court in *Sylvester,* 2009 U.S. Dist. LEXIS 101788, * 8-9. In *Sylvester*, the court decided that the untimely tender of a payment on a natural gas lease did not constitute a breach of the terms of the lease. The court first applied the aforementioned material breach factors and determined that the untimely payment did not constitute a material breach because, like here, the payment was made within the cure period and, thus, the factors did not weigh in favor of invalidation of the lease. The court also found significant the absence of a "time is of the essence" provision in the lease. According to the court:

> Where time is not of the essence, the mere failure to perform on the date mentioned in a contract is not per se a breach which wholly destroys the contract. Thus, it has been recognized that a brief delay in performance does not constitute an actionable breach of contract. Given the absence of a time is of the essence clause in the lease and [Defendant's] tender of payment before any notice of default had been communicated, the brief delay in making payment is not a breach as to entitle Plaintiffs to cancel the transaction.

*Id.* (internal citations and quotations omitted.) Likewise, the Lease at issue here contains no "time is of the essence" clause. Thus, for the same reasons set forth in *Sylvester*, the court does not find that the brief delay between the second request for payment of delay rentals and the making of the payment renders the Lease expired.[11]

---

[11] Such a holding comports with the principles of Pennsylvania contract law, which generally disfavor forfeiture in instances where a party alleged to have breached a contract or lease attempted to perform its duty under that contract or lease. *See Barraclough v. Atlantic Refining Co.*, 326 A.2d 477, 479 (Pa. Super. Ct. 1974) ("Equity does not favor a forfeiture and it has been long held that courts should greatly hesitate in enforcing one, especially when the contract has been carried out or its

(continued...)

16

Plaintiff relies heavily on *Hite v. Falcon Patners*, 13 A.3d 942 (Pa. Super. Ct. 2011) for the proposition that the payment of delay rentals cannot create an oil and gas lease with an indefinite term. In that case, the parties signed an oil and gas lease with a primary term of one year. The "term clause" stated, as follows:

> Term. Lessee has the right to enter upon the Property to drill for oil and gas at any time withinone [sic] (1) year from the date hereof *and as long thereafter as* oil or gas or either of them is produced form the Property, or as operations continue for the production of oil or gas, *or as Lessee shall continue to pay Lessors two ($2.00) dollars per acre as delayed rentals, or until all oil and gas has been removed from the Property, whichever shall last occur.*

*Id.* at 944 (emphasis added). The court, following an extensive analysis of Pennsylvania case law, affirmed the grant of summary judgment for the appellee-landowner, reasoning that the mere payment of delay rentals does not permit a lessee to extend the lease indefinitely. Rather, the term clause merely permitted the lessee to delay production within the one-year primary term by tendering the delay rental payment.

The court finds *Hite* to be inapposite to the case at bar. First, *Hite* does not stand for the broad proposition that a lessee cannot extend the terms of the lease by payment of a delay rental; rather, *Hite* explains that a lessee may not extend a lease *indefinitely* through the tendering of a delay rental. Here, the court is not concerned about an indefinite extension of the lease because the Extension of Term clause provides: "The Lessee may extend the primary term *for one additional pay period equal to the primary term* by paying to Lessor at any time within the primary

---

[11](...continued)
literal fulfillment has been prevented by oversight."); *see also Sylvester*, 2009 U.S. Dist. LEXIS 101788, at *7.

17

term an Extension Payment equal in amount to the annual Delay Rental . . . ." (App'x C) (emphasis added.) Accordingly, in this case, payment of the delay rental only allowed Defendant to extend the lease for one additional primary term, or for 10 years. The "term clause" in *Hite* did not contain any similar limiting language. Moreover, although the Extension of Term clause requires payment be rendered "within the primary term," the court, for the reasons stated above, does not find that the delayed tendering of the May 2, 2011 payment constitutes a material breach. Accordingly, Plaintiff is not entitled to a declaration that the lease expired as to the non-unitized acreage because of a material breach of the lease, and Defendant's motion will be granted in this regard.

### c. **Defendant did not surrender its rights under the lease**

Lastly, Plaintiff alleges that the May 16, 2011 letter from Cindi Jacoby, stating that the lease expired as to the non-unitized acreage, constitutes an offer to surrender SWEPI's interest in the Lease. The court disagrees. As required, the court will look to the plain terms of the Lease to guide its analysis. In this instance, the lease contains a "surrender clause" which states, in relevant part: "Lessee *may* surrender and cancel this Lease as to all or any part of the Leasehold *by recording a Surrender of Lease . . . .*" (App'x C) (emphasis added). Thus, to surrender the lease, Defendant must record a Surrender of Lease. It is uncontroverted that no such document was recorded. Plaintiff, however, argues that the word "may" in the surrender clause means that there are other methods by which the Lease may be surrendered. This argument is without support. The court interprets the plain meaning of this clause to mean that a lessee *is permitted* to surrender the lease, and, if it chooses to do so, the method by which it *must* do so is by recording a Surrender

of Lease. Having not done so here, the court finds that Defendant did not surrender its rights under the lease and, therefore, Defendant is entitled to summary judgment.

**IV.** <u>**Conclusion**</u>

In short, the court finds that the Lease has not expired with respect to the non-unitized acreage, nor has Defendant surrendered its rights under the lease. Moreover, Defendant has not breached the terms of the Lease in any material way. Accordingly, based on the uncontroverted record before the court, the court finds that Plaintiff is not entitled to declaratory judgment, and summary judgment will be entered in favor of Defendant.

An appropriate order will issue.

                                              s/Sylvia H. Rambo
                                              United States District Judge

Dated: February 11, 2013.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GEORGE W. LINDER, SENIOR, TRUST, WILLIAM H. LINDER, II, TRUSTEE,** : <br> : <br> **Plaintiff** : <br> : <br> v. : <br> : <br> **SWEPI LP, also known as SHELL WESTERN EXPLORATION AND PRODUCTIONS, LP,** : <br> : <br> **Defendant** : | **CIVIL NO. 1:11-CV-1579** |

# **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 12) is **GRANTED**. The clerk of court shall enter judgment in favor of Defendant and against Plaintiff as to all counts of the complaint. The clerk is directed to close the case.

                                                                     s/Sylvia H. Rambo
                                                      United States District Judge

Dated: February 11, 2013.